[Crim. No. 7830. Second Dist., Div. Four. Feb. 1, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM ELLHAMER, Defendant and Appellant.

Robert E. Krause for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman G. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In count one of an information filed by the Los Angeles district attorney defendants Donald H. Baxter and William Ellhamer were jointly charged with violations of Penal Code section 211, robbery. In count two defendant Baxter was charged with robbery. Defendant Baxter pleaded guilty to count one and admitted being armed with a deadly weapon. The robbery was fixed in the first degree.

Defendant Ellhamer, appellant herein, pleaded not guilty. An amended information was filed alleging two prior felony convictions. After a jury trial he was found guilty of robbery in the first degree. His motion for a new trial was denied and he was sentenced to state prison for the term prescribed by law, the sentence to run consecutively to sentences in case 152703, in which case appellant had been on parole. Appellant Ellhamer appeals from the judgment and the order denying his motion for a new trial.

On March 3, 1961, at approximately 11:45 a. m., defendant Donald Baxter walked up to Donald McPherson, assistant manager for Lucky Stores in Norwalk, California, as McPherson was writing up a grocery order. Defendant Baxter pulled a gun on McPherson and told McPherson to take him to the manager. The two men walked to the manager's office at the back of the store and McPherson motioned for the manager, Kenneth Green, to come out of the office.

McPherson told the manager, "This man's got a gun on me. He said that he's going to kill us if we don't give him the money." Defendant Baxter gave the manager a pillow case and told him to put the money in it. The manager went into the back office, opened the safe, put $1,250 into the pillow case and returned it to defendant Baxter. Baxter then fled from the store. McPherson pursued him. Outside the store McPherson saw defendant Baxter running through a parking lot and into an alley. When McPherson got to the alley, he noticed a blue Corvair, license number VBK 082, parked behind a barber shop located near the store. The hood was up and the door on the driver's side was open. He saw appellant close the hood of the Corvair. He saw him throw a pillow case in the back seat of the car. Ellhamer then entered the car. He sped away without stopping at the street intersections, spinning his wheels as he turned the corners.

Shortly thereafter Los Angeles Deputy Sheriff Paul A. Strohman went to a Bellflower address in response to a report that a car, previously reported to have been involved in a robbery, was located there. He discovered the car. There were two other deputies and several other people at the location. The deputies were informed that the two men who had gotten out of the car were in Apartment E at that address. The two deputies went to the front steps of the apartment while Deputy Strohman went around to the back. As he rounded the back of the building he observed defendant Baxter jumping from the second story window. Baxter had a pillow case

with him. He apprehended Baxter, searched the pillow case and found in it $1,250, a loaded gun and some make-up equipment.

The officers then went to Apartment E where they knocked on the door and called out that they were police officers. There was no response so the officers used a pass key given them by the manager of the apartment to open the door. Upon searching the apartment Officer Strohman and the other officer discovered appellant lying under a bed. Appellant was apparently "stuck" under the bed, unable to get out until the officers dismantled the bed and lifted it off him. The only statements appellant made at this time were "They made me drive," and when asked who, he said, "Joe made me."

At the trial, McPherson identified appellant as the man who sped away from the scene of the robbery in a Corvair after closing the car's hood. Officer Strohman identified him as the person who later was found under a bed in the apartment in front of which the Corvair was parked a few minutes after the robbery. McPherson previously had identified appellant in a police lineup on the day of the robbery. The pillow case which McPherson said he saw appellant throw into the Corvair was also identified by McPherson. According to the manager of the store, Mr. Green, the pillow case was similar to the one in which he placed the money.

Appellant contends the evidence was insufficient to sustain the conviction of armed robbery.

 The weight of the evidence and the credibility of witnesses are not reviewable by this court. (*People* v. *Williams,* 150 Cal.App.2d 171, 176 [309 P.2d 525].) The court on appeal will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. Before the verdict of the jury, which was approved by the trial court, can be set aside on appeal on the grounds of insufficiency of the evidence, it must appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The court must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether such facts are sufficient to support the verdict. If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that these circumstances might also reasonably be reconciled with the innocence of the defendant will not war-

rant interference with the determination of the jury. (*People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911]; *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

Appellant was convicted of aiding and abetting an armed robber. The robber confessed the commission of the crime, and appellant does not question that fact. The question before this court is whether or not there is sufficient evidence from which the jury could infer that appellant aided and abetted him. ██ "Aid" means to assist, to help or to supplement the efforts of another. (*People* v. *Bond*, 13 Cal.App. 175, 185 [109 P. 150].) ██ "Abet" means to knowingly and with criminal intent promote, encourage or instigate, by act or counsel, or by both act and counsel the commission of a criminal offense. (*People* v. *Dole*, 122 Cal. 486, 492 [55 P. 581, 68 Am.St.Rep. 50]; *People* v. *Villa*, 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People* v. *Best*, 43 Cal.App.2d 100, 105 [110 P.2d 504].)

██ Where a person goes along to divert suspicion or to serve as a lookout, to give warning of any interference of a crime being committed, or to take charge of an automobile and to keep the engine running to give direct aid to another person in making his escape from the scene of a crime, any one of these purposes is sufficient to base a reasonable inference that appellant, as the driver of the car, was aiding and abetting in the commission of the crime. (*People* v. *Silva*, 143 Cal.App.2d 162, 169 [300 P.2d 25].)

██ The fact that appellant was not shown to have any direct or personal interest in the outcome of the robbery, or whether he would gain in any way thereby, is immaterial. (*U.S.* v. *Moses*, 122 F.Supp. 523, 526, reversed on other grounds, 220 F.2d 166.) From the facts presented at the trial as heretofore recited there was sufficient evidence for the jury to reasonably infer that appellant aided and abetted an armed robber and was therefore guilty of the offense charged.

Appellant also contends the court erred in failing to instruct the jury that one charged as a principal for aiding and abetting the commission of a crime requiring specific intent must also have a specific intent to commit the crime to be found guilty.[1] This contention is untenable. ██ There is no question that one who does the act constituting the crime of

---

[1]The court read the following standard instructions to the jury:

"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or,

robbery is entitled to an instruction on specific intent. (*People v. Sanchez,* 35 Cal.2d 522, 526 [219 P.2d 9].) But it is the knowledge of the wrongful purpose of the actor plus the encouragement provided by the aider and abettor that makes the latter equally guilty. Although the guilt of the aider and abettor is dependent upon the actor's crime, the criminal intent of the aider and abettor is presumed from his actions with knowledge of the actor's wrongful purpose. (See 22 C.J.S., Criminal Law, § 87, p. 259; 16 A.L.R. 1043, 1045-1047.)

Several California cases have stated ". . . the aider and abettor must share the intent of the one doing the criminal act." (*People v. Wooten,* 162 Cal.App.2d 804, 810 [328 P.2d 1040]; *People v. Villa,* 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People v. Hill,* 77 Cal.App.2d 287, 293 [175 P.2d 45].) An examination of the authority upon which the proposition relies indicates it is knowledge of the actor's wrongful purpose which must be shared. (*People v. Dole,* 122 Cal. 486, 492 [55 P. 581, 68 Am.St.Rep. 50]; *People v. Stein,* 55 Cal.App.2d 417, 420 [130 P.2d 750]; *People v. Terman,* 4 Cal.App.2d 345, 347 [40 P.2d 915]; *People v. William Yee,* 37 Cal.App. 579, 583-584 [174 P. 343]; *People v. Armentrout,* 118 Cal.App. Supp. 761, 772 [1 P.2d 556].) ▮▮▮ As stated in *People v. Wooten, supra*: ". . . the [aider and abettor] is guilty only when his acts are done in pursuance of the unlawful scheme, and when, in addition to being present, he actually aided and encouraged the perpetrators *with knowledge of the felonious intention* [citations]." (Italics added.)

The court correctly instructed the jury on this point.

The judgment and order denying appellant's motion for a new trial are affirmed.

Burke, P. J., and Balthis, J., concurred.

---

whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof." (CALJIC 91 revised.)

"For one person to aid and abet another in the commission of a criminal offense means to knowingly and with criminal intent aid, promote, encourage or instigate by act or counsel, or by both act and counsel, the commission of such offense." (CALJIC 91-E.)