405 A.2d 1297

**COMMONWEALTH of Pennsylvania**

v.

**Darryl McBEE, Appellant.**

Superior Court of Pennsylvania.

Argued May 8, 1979.

Decided June 13, 1979.

William T. Cannon, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, for Commonwealth, appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

Appellant appeals directly from judgments of sentence following his conviction by a jury for murder of the second degree, robbery, and conspiracy. He contends *inter alia*[1] that the lower court erred in (1) not suppressing his statement to police and (2) failing to sustain his challenge for cause to a venireman. We conclude that the lower court erred in not sustaining appellant's challenge for cause and, accordingly, reverse and remand for new trial.

■ Appellant contends that the lower court erred in admitting his confession to police because it was involuntary. Specifically, he claims that his confession resulted from physical abuse, threats, and cajolery by the police. However, testimony of the interrogating officers refuted this claim and was credited by the suppression court. Because the evidence supports the suppression court's findings, we conclude that this claim is without merit. *See Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977); *Commonwealth v. Walker*, 470 Pa. 534, 368 A.2d 1284 (1977); *Commonwealth v. Washington*, 259 Pa. Super. 407, 393 A.2d 891 (1978).

■ Appellant, a 17 year old juvenile at the time of arrest, also contends that the lower court should not have admitted

---

* Chief Justice Michael J. Eagen of the Supreme Court of Pennsylvania and Judge Warren K. Hess of the Court of Common Pleas of Berks County, Pennsylvania, are sitting by designation.

1. Because of our disposition, we do not decide appellant's other contentions that the lower court erred in: (1) refusing to send out certain photographs of appellant to the jury; (2) refusing to allow his trial counsel to question an officer concerning a co-defendant's *Miranda* warnings; (3) upholding the Commonwealth's exercise of peremptory and for cause challenges because such exercise amounted to systematic discrimination against blacks; (4) limiting the scope of voir dire; (5) charging the jury on murder of the first degree; (6) refusing to give the jury an instruction concerning appellant's mere presence at the scene of the crime.

his confession because it was taken (a) in the absence of a consultation with an interested and informed adult, *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), and (b) contrary to an agreement that appellant's counsel be present, *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Commonwealth v. Bullard*, 465 Pa. 341, 350 A.2d 797 (1976). Because appellant failed to raise the *McCutchen* issue pre-trial and the *Brewer* issue in post-verdict motions, we hold that he has waived those issues. *See Commonwealth v. Baylis*, 477 Pa. 472, 384 A.2d 1185 (1978); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

Appellant also contends that the lower court abused its discretion in not sustaining his challenge for cause of venireman Joseph Steinmetz. The facts are as follows:

In response to a question by the court, venireman Joseph Steinmetz responded:

"Well, my niece was killed approximately two years ago, Your Honor. She was shot. I don't think I could give a fair verdict."

The following colloquy then ensued between the court and Mr. Steinmetz:

"Q. Do you mean somebody was arrested for the incident and there was a trial?

"A. Yes.

"Q. Were you in any way a witness to the incident or a participant in Court?

"A. No.

"Q. Mr. Steinmetz, it must be a very traumatic experience to have someone in the family killed. If I were to tell you that under the law you must set that thing aside and not let it interfere with your responsibilities in this case, are you telling me that you could not in good conscience do that?

"A. I don't know, Your Honor.

"Q. If I asked you to assure us to the best of your ability you will try not to let that interfere with your decision in this case, could you assure the Court that you would do that?

"A. I would try.

"Q. To the best of your ability?

"A. Yes.

"Q. That means that either in the course of trial or when listening to the testimony, and since this is a killing here, I am not sure whether it is a shooting or otherwise, but there is a killing charged here, that you would not let, as you hear that testimony, you will not let your memory of your niece being also killed interfere with your listening to the evidence, and particularly when you go to the jury room to deliberate, that means you will have to make sure that if the memory of your family tragedy should come into your mind, that you will to the best of your ability set it aside and not let it interfere with your decision? Are you sure you will try to the best of your ability to do that?

"A. I don't think I could set it aside, Your Honor.

"Q. Can you set it aside to the point that you will not let it interfere with your duty?

"A. I will try to the best of my ability."

Upon conclusion of the court's questioning, defense counsel was permitted to ask supplemental questions:

"Q. Mr. Steinmetz, let me ask you this, sir, do you think you could be as fair and impartial juror as someone who has never had someone killed in their family?

"A. I don't think I could answer that question.

"Q. You were honest enough to tell us that you didn't think you could give this defendant a fair trial, did you not?

"A. Well, with the thought of my niece in mind, that is what I was thinking about.

"Q. When there is testimony in this case from the Commonwealth that this defendant shot the victim to death, will you be able to put out of your mind the fact that your niece was shot to death?

"A. I answered that question before. I said I don't think I could."

Finally, the Assistant District Attorney asked the following questions and received the following answers:

"Q. Mr. Steinmetz, as a juror you would have to decide the outcome of this case based upon the evidence you heard in this courtroom.

"A. That is right.

"Q. To your knowledge this defendant had absolutely nothing to do with the situation involving the death of your niece?

"A. That is correct.

"Q. Do you or could you pay attention to the evidence you heard in this courtroom?

"A. Yes.

"Q. Would you be swayed in any respect about your prior experience with your niece?

"A. That is what I am saying, I don't know if I could or not.

"Q. Do you have any particular reason to think that merely because this is a murder case involving a shooting that that would interfere with your ability to listen to the evidence?

"A. No. It wouldn't interfere with my ability as to the evidence, no, but—

"Q. Would you be able to listen to His Honor's instructions on the law?

"A. Yes.

"Q. Will you follow it completely?

"A. To the best of my ability.

"Q. Will you apply the law to the facts as you find them?

"A. To the best of my ability."

Appellant's challenge for cause to Mr. Steinmetz was refused. Appellant then used a peremptory challenge. When appellant subsequently exhausted his peremptory challenges, he requested an additional challenge because of the court's refusal to sustain the challenge for cause to Mr. Steinmetz. The court denied this request.

■ In order to succeed in challenging a venireman for cause, appellant must show that the prospective juror had a

bias or prejudice "that could not be readily set aside and would in fact influence and color his judgment." *Commonwealth v. Hoss*, 469 Pa. 195, 204, 364 A.2d 1335, 1340 (1976). *See Estes v. Texas*, 381 U.S. 532, 542–43, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Commonwealth v. Jones*, 477 Pa. 164, 383 A.2d 874 (1978). Although a venireman's hesitancy is not a basis for a challenge for cause "where it is apparent that . . . the juror was satisfied that he could perform his function." *Commonwealth v. Bighum*, 452 Pa. 554, 561, 307 A.2d 255, 259 (1973), such is not the situation in the case at bar. A fair reading of Mr. Steinmetz' voir dire reveals that he had a sincere, substantial and persistent doubt concerning his ability to give a fair verdict despite his equally sincere assertion that he would try to the best of his ability to follow the court's instructions and, implicitly, not to allow his niece's death by shooting to influence his judgment. We conclude, therefore, that the lower court abused its discretion in refusing to excuse Mr. Steinmetz for cause. Because appellant was thereby forced to use one of his peremptory challenges to excuse Mr. Steinmetz and exhausted all of such challenges prior to the seating of the jury, the lower court's error was not harmless. *Jones, supra.*

Judgment of sentence reversed and case remanded for new trial.