J-S21035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                    :           PENNSYLVANIA
                    :
         v.             :
                    :
                    :
ROYLANDO SANTIAGO         :
                    :
       Appellant      :   No. 2208 EDA 2023

Appeal from the Judgment of Sentence Entered August 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001349-2016

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:        **FILED JULY 17, 2024**

Roylando Santiago (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of attempted rape and aggravated indecent assault.[1]  We affirm.

On March 14, 2015, Officer Gregory Kravitz (Officer Kravitz), of the Philadelphia City Police, responded to 201 West Wishart Street for a reported rape.  N.T., 3/23/23, at 111-12.  Upon arrival, Officer Kravitz spoke with 48-year-old K.H. (the victim), who "was crying, and … having a hard time catching her breath to tell [him] what happened."  **Id.** at 115.  The victim reported a man had entered her bedroom while she slept and attempted to sexually assault her.  **Id.** at 43, 47.  Officer Kravitz logged into evidence a wallet

---

[1] 18 Pa.C.S.A. §§ 901(a), 3121(a)(1), 3125(a)(2).

containing Appellant's identification card, which the victim found in her bedroom. *Id.* at 124. Detectives with the Special Victims Unit interviewed the victim, and referred her to the Philadelphia Sexual Assault Response Center. *Id.* at 149. There, a nurse conducted a sexual assault examination, which led to the recovery of Appellant's DNA on the victim's breast. *Id.* at 149-50, 165.

On March 16, 2015, law enforcement filed a criminal complaint against Appellant. Following a lengthy delay to address competency concerns not relevant to the instant appeal, Appellant proceeded to a two-day jury trial,[2] where he was represented by court-appointed counsel. The trial court succinctly summarized the testimony adduced at trial:

> The [victim] testified at trial that she awoke to Appellant in her bedroom on March 14, 2015. N.T., 3/23/23, at 44. [A]ppellant jumped on her back and a struggle ensued. *Id.* at 44-45. Appellant knocked [the victim's] TV over, punched her repeatedly in the face, dragged her around her bedroom, and pulled hair from her scalp. *Id.* at 45. [The victim] begged Appellant to stop. *Id.* Appellant either unbuttoned or lifted her top and began sucking on her breast. *Id.* at 49. Appellant then inserted his fingers into [the victim's] vagina, flipper her over, and attempted to insert his penis into her anus. *Id.* at 49-52.
>
> After Appellant finished abusing [the victim], he took her cell phone and ran out of the house. *Id.* at 62. [The victim] found [Appellant's] wallet on her bedroom floor, including his Pennsylvania identification card. *Id.* at 64-65, 118-19.

_____

[2] During jury selection, prospective juror C.K. (Juror 41) detailed her association with law enforcement, and her and her daughter's prior sexual victimization. N.T., 3/22/23, at 87-90.

> Police recovered [the victim]'s cell phone during Appellant's
> arrest shortly after the assault. ***Id.*** at 57, 131.

Trial Court Opinion, 11/14/23, at 2 (citations modified).

On March 27, 2023, the jury convicted Appellant of the above offenses. On August 4, 2023, the trial court sentenced Appellant to an aggregate 7 to 14 years in prison, followed by three years' probation. Although counseled, Appellant filed a *pro se* "Petition for Reconsideration" and an "Amended Motion for Reconsideration and/or Reduction of Sentence" on August 16, 2023. The trial court docket reflects the trial court had denied Appellant's *pro se* motions one day *prior*, on August 15, 2023. On August 16, 2023, Appellant also filed a timely *pro se* notice of appeal and an amended notice of appeal.[3] Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I. Did the [trial] court abuse its disc[re]tion by refusing to grant Appellant's challenge for cause as to [Juror] 41[,] such that a new trial is now required in the interest of justice?

II. Did the trial court abuse its discretion in permitting matters of material fact to be submitted to the jury given the conflicting

_____

[3] Generally, "no defendant has a constitutional right to hybrid representation, either at trial or on appeal." ***Commonwealth v. Staton***, 184 A.3d 949, 957 (Pa. 2020) (citation omitted). Nevertheless, "when a counseled defendant files a *pro se* notice of appeal, the appeal is not a legal nullity[,] and has legal effect." ***Commonwealth v. Hopkins***, 228 A.3d 577, 580-81 (Pa. Super. 2020) (citation omitted); ***see also Commonwealth v. Williams***, 151 A.3d 621, 624 (Pa. Super. 2016) ("Because a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy in creating a motion, petition, or brief.").

testimony of witnesses[,] such that the weight and sufficiency of the evidence were inadequate?

Appellant's Brief at 6 (capitalization modified).

In his first issue, Appellant argues that, despite prospective Juror 41's representation that she could be fair and impartial if selected as a juror, "the *totality* of Juror 41's answers in response to questions from the trial [court] suggest … she should have been stricken for cause." *Id.* at 12 (emphasis in original). Appellant contends that "the answers given by Juror 41 … were the answers Juror 41 anticipated the trial [court] would want in response to [its] questions." *Id.* at 13.

Our standard of review is well settled: "A trial court's decision regarding whether to disqualify a juror for cause is within its sound discretion and will not be reversed in the absence of a palpable abuse of discretion." ***Commonwealth v. Clemat***, 218 A.3d 944, 951 (Pa. Super. 2019) (citing ***Commonwealth v. Stevens***, 739 A.2d 507, 521 (Pa. 1999)). Further, "[a]ppellate courts defer to the trial court's assessment of a prospective juror's answers during *voir dire* because the trial court is in the best position to assess the [prospective juror's] credibility and fitness to serve[.]" ***Commonwealth v. Delmonico***, 251 A.3d 829, 839 (Pa. Super. 2021) (quoting ***Shinal v. Toms***, 162 A.3d 429, 442 (Pa. 2017)).

When considering whether a trial court abused its discretion in refusing to disqualify a juror for cause, we are mindful of the following:

The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor…. It must be determined whether any biases or prejudices can be put aside on proper instruction of the court…. A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

*Clemat*, 218 A.3d at 951 (brackets omitted) (quoting *Commonwealth v. Briggs*, 12 A.3d 291, 332-33 (Pa. 2011)).

Instantly, the following discussion occurred regarding Juror 41's ability to remain fair and impartial at Appellant's trial:

THE COURT: Good afternoon. When I asked the panel if anyone had been a victim, or someone close to them, of sexual assault, you raised your hand. Can you tell us about that? This case involves allegations of sexual assault, and we need to make sure that people can separate personal experiences from the evidence in this case[,] and abide by the law that [Appellant] is presumed innocent unless and until the Commonwealth proves his guilt beyond a reasonable doubt.

JUROR: I was sexual[ly] assaulted as a child, and my daughter was approached.

THE COURT: Okay. Understanding that there are similar allegations in this case, would you be able to separate that and render a verdict in this case based on the evidence in this case[,] and applying the law that I give you notwithstanding the trauma you personally suffered?

JUROR: Yes.

….

THE COURT: And then, [] you or someone close to you has worked in law enforcement.

JUROR: Yes.

THE COURT: Tell us about that.

JUROR: My sister is a police officer in the 2nd District.

THE COURT: And I'm sure if she were here, she would subscribe to the same theme of impartiality and fairness.

JUROR: Yes.

THE COURT: And have you or someone close to you ever been accused of sexual assault?

JUROR: Yes.

THE COURT: Tell me about that.

JUROR: My uncle was accused.

THE COURT: What happened?

JUROR: We took the steps. We did report it. The investigation was handled. Nothing came of it. I don't know. We just took the necessary steps.

THE COURT: Of reporting him to the police?

JUROR: Yes.

THE COURT: Thank you. No further questions.

[APPELLANT'S COUNSEL]: I have no question[s] at this time.

[PROSECUTOR]: No questions.

N.T., 3/22/23, at 87-90.

In support of his argument that the trial court improperly denied his request to strike Juror 41 for cause, Appellant relies on *Commonwealth v.*

- 6 -

*McBee*, 405 A.2d 1297 (Pa. Super. 1979), *Commonwealth v. Johnson*, 445 A.2d 509 (Pa. Super. 1982), and *Commonwealth v. Penn*, 132 A.3d 498 (Pa. Super. 2016). We conclude each decision is distinguishable from the instant case.

In *McBee*, a panel of this Court reversed the appellant's murder conviction, where the trial court denied his request to strike a juror for cause. 405 A.2d at 55. The Court noted that while "a venireman's hesitancy is not a basis for a challenge for cause where it is apparent that the juror was satisfied that he could perform his function, such is not the situation in the case at bar." *Id.* (citation, quotation marks, and brackets omitted). The juror in question had demonstrated a "sincere, substantial and persistent doubt concerning his ability to give a fair verdict" in the appellant's murder case, because the juror's niece had recently been murdered. *Id.* at 54-55. **The juror stated numerous times that he did not believe he could be fair or set aside his personal experience when evaluating the Commonwealth's evidence.** *Id.* at 54. As the appellant was forced to use a peremptory challenge to remove this prospective juror, we concluded the trial court's error was not harmless. *Id.* at 55.

The *Johnson* Court similarly concluded that the trial court erred in refusing to grant the appellant's request to strike for cause a juror whose daughter had been the victim of a substantially similar crime. 445 A.2d at 514. In *Johnson*, the prospective juror became visibly distraught when

- 7 -

recounting the crime perpetrated against his daughter. *Id.* at 513. Although **the prospective juror initially stated his belief that he could not fairly judge the appellant**, he ultimately agreed with the trial court that he could be fair. *Id.* This Court, relying on *McBee*, *supra*, concluded the juror's "eventual assurance to the court that he would be fair did not dispel the force of these admissions." *Id.* at 514 (citation, brackets, and quotation marks omitted).

Finally, in *Penn*, the trial court refused to strike for cause a prospective juror, **who testified she would be more likely to believe the testimony of a police officer**, "thus indicating that [she] was biased in favor of the police and the Commonwealth." 132 A.3d at 504. In addition, the prospective juror explained that she was currently working as a security guard; had previously worked for her university's police department; had completed internships with law enforcement agencies; and her boyfriend was an officer in a local police department. *Id.* at 505. Significantly, "the Commonwealth's entire case rested upon the credibility of the police officers." *Id.* at 504. The *Penn* Court quoted *Johnson*, *supra*, extensively in concluding that the prospective juror's "eventual assurance" that she could be fair did not cure her prior, repeated admissions of bias. *Id.* at 505.

Instantly, the trial court explained its rationale for denying Appellant's request to strike Juror 41 for cause in its Pa.R.A.P. 1925 opinion:

> During *voir dire*, Juror 41 stated she had been a victim of sexual abuse as a child and her daughter had been "approached."

N.T., 3/22/23, 87-88. The [trial c]ourt asked Juror 41 whether she could put all biases aside and render a fair verdict "notwithstanding the trauma [you] personally suffered[?]" *Id.* at 88. Juror 41 answered "yes." *Id.* Appellant's attorney moved to strike on the ground[s] that there could be some "latent effects" based on [the juror's] prior experiences. *Id.* at 90.

The trial court denied the motion and explained its reasons on the record. Other potential jurors had "expressed hesitancy that they would be able to separate their trauma from this case, and several have, and I excused them for cause. [Juror 41] answered in a strong, clear voice that she would have no problem separating that." *Id.* at 91. **After being sworn to tell the truth during *voir dire*, Juror 41 gave a clear, unequivocal answer that she could be fair.** *Id.* The court, in its discretion, accepted that answer because Juror 41, unlike other jurors the court ha[d] excused for cause, expressed no hesitancy. *Id.*

Juror 41 came up for individual *voir dire* after eight of the 12 jurors had been seated. [Appellant] by that time had already used all seven of [his] preemptory strikes. Juror 41[,] by that default[,] was seated as [] Juror Nine. *Id.*

The trial court did not palpably abuse its discretion when it denied Appellant's motion to strike Juror 41 for cause[,] because Juror 41 had [] asserted she could be fair and impartial notwithstanding the personal trauma she had endured.

Trial Court Opinion, 11/14/23, at 3-4 (citations modified; emphasis added).

Upon review, we discern no legal error or abuse of discretion on the part of the trial court. Unlike the cases Appellant relies upon, Juror 41 consistently and unequivocally expressed her conviction that she could be fair and impartial in serving as a juror, irrespective of her and her daughter's prior victimization. *See* N.T., 3/22/23, at 87-88. She further indicated that her sister's position as a police officer would not bias her in favor of law enforcement or the Commonwealth. *See id.* at 89. Upon judging the

- 9 -

demeanor of Juror 41 in giving her responses, the trial court was satisfied as to her credibility. *See* Trial Court Opinion, 11/14/23, at 3; *see also Delmonico*, 251 A.3d at 839 ("[T]he trial court is in the best position to assess the [prospective juror's] credibility and fitness to serve[.]" (citation omitted)). Accordingly, Appellant's first claim merits no relief.

Appellant next challenges (in a single, vague assignment of error) the sufficiency and weight of the evidence adduced at trial. Both claims are waived.

To preserve a challenge to the sufficiency of the evidence, "an appellant's [Pa.R.A.P.] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (citation omitted).

In his Rule 1925(b) statement, Appellant baldly alleged, "[t]he sufficiency of the evidence was inadequate to sustain a 'guilty' verdict as it relates to the charges of Attempted Rape and Aggravated Indecent Assault."

1925(b) Statement, 8/31/23, at 2. As Appellant failed to comply with the above precedent, his sufficiency challenge is waived.[4]

Finally, Appellant purports to challenge the weight of the evidence presented at trial. To preserve a challenge to the weight of the evidence, a defendant must raise the issue orally or by written motion prior to sentencing, or by post-sentence motion. Pa.R.Crim.P. 607(A)(1-3).

Although Appellant, *pro se*, filed two post-sentence motions, they were legal nullities, and the trial court erred when it considered the motions on their merits. **See Commonwealth v. Dirosa**, 249 A.3d 586, 588 (2021) ("[W]here [a] defendant was represented by counsel, his *pro se* post-sentence motion was a nullity, having no legal effect." (citation and quotation marks omitted)); **see also Commonwealth v. Jette**, 23 A.3d 1032, 1044 (Pa. 2011) ("[W]e reiterate that the proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion."). Significantly, Appellant did not challenge the weight of the evidence in either of his *pro se* post-sentence

---

[4] Even if Appellant had preserved his sufficiency challenge, he makes no argument concerning the sufficiency of the Commonwealth's evidence in his brief. **See Commonwealth v. Lawrence**, 313 A.3d 265, 278 n.3 (Pa. Super. 2024) ("It is well settled that this Court will not act as counsel and will not develop arguments on behalf of an appellant." (citation, brackets, and quotation marks omitted)).

motions.[5]   Consequently, Appellant failed to preserve his challenge to the

weight of the evidence, and he is entitled no relief.[6]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  7/17/2024

_____

[5] In both post-sentence motions, Appellant vaguely challenged the trial court's imposition of sentence as excessive.  **See** Petition for Reconsideration, 8/16/23, at 1-2 (unpaginated); Amended Motion for Reconsideration, 8/16/23, at 1-2 (unpaginated).

[6] Even if Appellant had preserved his weight claim, he would be entitled no relief.  In his three-sentence argument, Appellant contends that there was contradictory evidence regarding the length of time the victim knew Appellant. Appellant's Brief at 15.  It is well settled that "inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence." **Commonwealth v. Jacoby**, 170 A.3d 1065, 1081 (Pa. 2017) (citation omitted).